IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

TIERRA COLEMAN,

              Plaintiff,

v.                                                    Civil Action File No.

FOX THEATRE, INC.

              Defendant.

**COMPLAINT**

Plaintiff, Tierra Coleman  ("Plaintiff" or "Ms. Coleman"), by and through her counsel of record, Jean Simonoff Marx of Marx & Marx, L.L.C., as and for her Complaint, respectfully alleges as follows:

<u>INTRODUCTION</u>

1.

This is an action under Title VII of the 1964 Civil Rights Act, 42 U.S.C. §§2000e *et seq*. (hereinafter "Title VII"), to correct unlawful employment practices by Defendant, The Fox Theatre, Inc. ("The Fox") on the basis of gender (sex), for sexual harassment, for unlawful retaliation and retaliatory harassment, and to

1

provide appropriate relief to Ms. Coleman who was and continues to be adversely affected by such practices.

In particular Ms. Coleman alleges that she was subjected to ongoing sexual harassment by a male co-worker (Raleek Sapp) whose sexual harassment took the form *inter alia* of daily unwelcome romantic and sexual advances, comments about his "dick", her being his, wanting to have sex with her, spreading rumors in the workplace that they were together, stalking her, and sexually assaulting her including grabbing her breasts. Mr. Sapp's unrelenting advances were unwelcome to the point of Ms. Coleman crying and pleading with him to stop, which he refused to do, even after he was promoted from being her co-worker to being her supervisor. This harassment occurred on a day in day out basis during the entirety of her employment, even in front of other coworkers and managers, to her great embarrassment.

Ms. Coleman repeatedly complained to her immediate supervisors, Kris Rosado and Saxton Scott about Mr. Sapp's unrelenting and unwelcome romantic and sexual pursuit and advances towards her, and about complaints by other female employees about Mr. Sapp sexually harassing them too. Ms. Rosado and Mr. Scott threatened Ms. Coleman not to go outside the Food and Beverage Department where they all worked. Ms. Rosado's response to Ms. Coleman's repeated complaints was to tell Ms. Coleman to "give him what he wants", meaning to have

sex with him. Mr. Scott's response was to dismiss Ms. Coleman's complaints, telling her that she needed to stop being childish, and learn to work with Mr. Sapp. Mr. Scott denied Ms. Coleman's requests to be moved to a different department to get away from Mr. Sapp. He also denied Ms. Coleman promotions because of her "negative comments", which were her repeated complaints about Mr. Sapp and The Fox's inaction to remedy the situation.

The Fox ignored Ms. Coleman's repeated complaints about a sexually hostile work environment, subjected her to a retaliatory hostile environment and then two days following yet another complaint to Ms. Rosado and Mr. Scott, they fired her based on fabricated reasons.

Ms. Coleman seeks declaratory, injunctive and equitable relief, and money damages for redress of rights secured to her by the above statute. Plaintiff also seeks an award of attorneys' fees and costs, pursuant to 42 U.S.C. §1988.

<u>PARTIES</u>

2.

Plaintiff, Tierra Coleman is an African American female natural person residing in Atlanta, Georgia and is a United States citizen.

3.

Ms. Coleman was an employee of Defendant The Fox within the meaning of Title VII.

4.

On information and belief, The Fox is a domestic nonprofit corporation registered with the State of Georgia.

5.

According to the 2024 Georgia Secretary of State's Registered Corporation website, The Fox's agent for service of process is Allan Vella located at 660 Peachtree Street, NE Atlanta, GA 30308 in Fulton County, Georgia.

6.

On information and belief, The Fox is an "employer" within the meaning of Title VII, as it is engaged in an industry affecting interstate commerce and at all relevant times employed and continues to employ more than 15 employees.

<u>JURISDICTION AND VENUE</u>

7.

Jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§ 1331 and 1343 for violations of Acts of Congress providing for equal rights of citizens. The jurisdiction of this Court is also invoked pursuant to 42 U.S.C. §§2000e *et seq*. ("Title VII") and 42 U.S.C. §1981. Supplemental jurisdiction pursuant to 28 U.S.C. §1367(a) is also invoked over related claims arising under Georgia State law.

8.

Venue is proper in this district and division under 28 U.S.C. §1391 because

The Fox conducts business in this District and Division,  and the unlawful actions and practices alleged herein were committed within the Northern District of Georgia.

## NATURE OF THIS ACTION

9.

This complaint raises claims under Title VII for unlawful sex discrimination, sexual harassment, retaliatory harassment and retaliation. The complaint seeks declaratory and permanent injunctive relief, reinstatement or front pay in lieu thereof, and damages for redress of rights secured to Plaintiff by Title VII in addition to an award of attorneys' fees and costs, pursuant to 42 U.S.C. §1988. This complaint raises claims under Georgia State law for assault and battery, invasion of privacy, intentional infliction of emotional distress and negligent retention or supervision.

## ADMINISTRATIVE PROCEDURES
## AND SATISFACTION OF CONDITIONS PRECEDENT

10.

Ms. Coleman started working for The Fox on or about September 21, 2021 as Assistant Food and Beverage Manager.

11.

On July 29, 2022 The Fox terminated Ms. Coleman.

12.

Ms. Coleman timely filed an EEOC Charge alleging sexual harassment,

retaliatory harassment and retaliation on January 20, 2023.

13.

The EEOC issued a Right to Sue letter on February 9, 2024 which Ms.

Coleman's counsel received that day.

14.

This Complaint is being timely filed within 90 days of receipt of the Right to

Sue letter.

15.

All conditions precedent to maintaining this action have been met.

FACTS

Sexual Harassment Started at the Very Beginning of Ms. Coleman's Employment
and Ms. Coleman Repeatedly Complained about it to Her Supervisors

16.

Ms. Coleman started her employment at The Fox as Assistant Food and

Beverage Manager on or about September 21, 2021.

17.

Ms. Coleman's job duties as Assistant Food and Beverage Manager included

setting up the bars, training bartenders, helping with hiring, job interviews, inventory,

crowd control, and doing write-ups of other employees which she was either directed

6

to do by Saxton Scott or which had to be approved by Mr. Scott.

18.

As Assistant Food and Beverage Manager, Ms. Coleman reported directly to the Food and Beverage Manager, who was first Kris Rosado and then Raleek Sapp, who was promoted to the Food and Beverage Manager position.

19.

On information and belief the Assistant Food and Beverage managers reported to the Food and Beverage Manager. On information and belief the Food and Beverage Manager was responsible for inventory, doing morning line-up, and personnel issues. Morning line up refers to a daily "team meeting" that occurred to give a run down about how a particular day's show would run, timing, and what was expected of each employee.

20.

Kris Rosado was Food and Beverage Manager when Ms. Coleman first started, and Ms. Coleman's direct supervisor.

21.

Ms. Rosado was thereafter promoted to Assistant Food and Beverage Director in or about mid-April 2022, and Mr. Sapp was promoted over Ms. Coleman to Ms. Rosado's former position as Food and Beverage Manager.

22.

At all relevant times, Kris Rosado reported to Saxton Scott.

23.

When Ms. Coleman began working at The Fox, Saxton Scott was Assistant Food and Beverage Director, reporting to Food and Beverage Director Craig Phillips. In or about mid-April 2022, Mr. Scott was promoted to Food and Beverage Director, and reported directly to the CEO, Allan Vella.

24.

Ms. Rosado told Ms. Coleman that any issues at work needed to be reported to her (Ms. Rosado),  including any issues with any other employee. Ms. Rosado specifically told Ms. Coleman that she could not violate the "chain of command" or bring any complaints outside the Food and Beverage Department.

25.

From September 2021 until he was promoted in mid-April 2022, Raleek Sapp was Ms. Coleman's co-worker. When Mr. Sapp was promoted to Food and Beverage Manager in mid-April 2022, he became Ms. Coleman's direct supervisor.

26.

As described above, and in addition to the aforesaid job duties of the Food and Beverage Manager, on information and belief Mr. Sapp's responsibilities as Food and Beverage Manager included *inter alia* conducting morning line up, directing

employees who reported to him regarding their work duties, monitoring their work performance, and facilitating their obtaining necessary supplies to complete their duties.

27.

During the entirety of her employment at The Fox, Mr. Sapp subjected Ms. Coleman to unwelcome romantic and sexual advances day in and day out, i.e. daily whenever she worked with him, over the entire period of her employment until she was fired. Mr. Sapp's unwelcome romantic and sexual advances towards Ms. Coleman occurred both when he was her co-worker and when he was her direct supervisor. They did not stop despite her repeated pleas to him to stop, and despite her repeated complaints to Kris Rosado and Saxton Scott about Mr. Sapp's unrelenting sexual harassment.

28.

Mr. Sapp's sexual harassment of Ms. Coleman took the form of his commenting about Ms. Coleman's body, stating that she looked good, stating that he "wanted" her, and telling her that when he looked at her it "made [him] "act up". Mr. Sapp repeatedly told Ms. Coleman he wanted a relationship with her, repeatedly told her that he wanted her to be his girlfriend, spread rumors in the workplace at The Fox that she was his girlfriend, stalked her outside of work including following her to her other job, and followed her home.

29.

Day in and day out, during the entirety of Ms. Coleman's employment at The Fox, Mr. Sapp made unambiguous sexual advances towards Ms. Coleman telling her that he wanted to have sex with her, that he had a big "dick" , that if he put it in her, she wouldn't be able to walk, that he wanted to "go down" on her, and that if she were with him, she'd never leave.

30.

Once Mr. Sapp became Food and Beverage Manager, he deliberately made sexual and romantic statements not only to Ms. Coleman directly at every opportunity when they were alone, but in front of coworkers and other Fox managers and employees in order to embarrass her and make her feel uncomfortable. He used morning line up particularly to say sexually and romantically inappropriate things to embarrass Ms. Coleman.

31.

After Mr. Sapp became food and Beverage Manager, he routinely sent everyone home so that Ms. Coleman was the sole Assistant Food and Beverage Manager, and so that she would have to be alone with him and "close" with him.

32.

Mr. Sapp also committed sexual assault and battery towards Ms. Coleman by rubbing up against her, side hugging her, kissing her and grabbing her breasts.

33.

Often Mr. Sapp's sexual harassment of Ms. Coleman occurred in front of coworkers, which escalated after he became Food and Beverage Manager.

34.

Several Fox employees provided written statements to The Fox corroborating Ms. Coleman's allegations of continuing and escalating unwanted romantic and sexual advances by Mr. Sapp towards Ms. Coleman, and Mr. Sapp's escalating negative treatment of Ms. Coleman after he became her supervisor.

35.

In its Position Statement submitted to the EEOC, The Fox admitted that "Ms. Coleman declined to enter into a romantic relationship with Mr. Sap'" and further admitted that she complained to her supervisor's Kris Rosado and Saxton Scott, "[s]pecifically . . . about allegedly receiving unwanted attention from Mr. Sapp."

36.

Ms. Coleman's first encounter with Mr. Sapp was on September 30, 2021, when he was supposed to train Ms. Coleman and other Assistant Food and Beverage Managers. However, no other Assistant Food and Beverage Managers showed up, and instead, Mr. Sapp showed up with flowers for Ms. Coleman.  Mr. Sapp told Ms. Coleman on that occasion that other managers had talked about her, but that he didn't know how pretty she was. Mr. Sapp told Ms. Coleman that he was interested in

getting to know her outside of work, as in having a dating relationship. He told Ms.

Coleman that he wanted her to be his girlfriend. Mr. Sapp told Ms. Coleman that he

is a man, that he knows what he wants, and that he goes after what he wants. Ms.

Coleman made clear that his advances were unwelcome, telling Mr. Sapp directly

that she was not interested in talking to or dating outside of work someone she

worked with, and did not want to have a romantic relationship with him.

37.

Ms. Coleman immediately went to Ms. Rosado on September 30, 2021 to

complain about Mr. Sapp's unwanted and unwelcome advances. She recounted her

conversation with Mr. Sapp, and complained about it. Ms. Coleman went to Ms.

Rosado because Ms. Rosado had told her that she (Ms. Rosado) was the person to

whom to direct everything work related.  Ms. Coleman reiterated that she does not

get involved outside of work with people she works with, and that the encounter with

Mr. Sapp was unwelcome, that she perceived Mr. Sapp as being very aggressive, and

that she was upset by and very uncomfortable with this encounter. Ms. Coleman also

complained to Ms. Rosado that Mr. Sapp was spreading rumors at The Fox that he

and she were together. Ms. Rosado was dismissive and told Ms. Coleman that she

should give Mr. Sapp what he wants.

38.

Ms. Coleman complained to her superiors repeatedly about Mr. Sapp's
unwelcome romantic and sexual pursuit of her, which she had clearly told Mr. Sapp
to stop. On October 18, 2021 Mr. Sapp again told Ms. Coleman that he wanted her to
be his girlfriend, that he had a "long dick" and if Ms. Coleman "g[a]ve him a chance
[she] wouldn't be able to walk". On this date Ms. Coleman also saw Mr. Sapp
sexually harass another woman, Delaney Francher, who reported to Ms. Coleman,
and who complained to Ms. Coleman about Mr. Sapp's inappropriate actions. Ms.
Francher told Ms. Coleman that she was embarrassed and Mr. Sapp's action clearly
made Ms. Francher upset because she cried when talking to Ms. Coleman. Ms.
Coleman told Ms. Francher that she should talk to Kris, Rosado, to which Ms.
Francher commented that nothing would change.

39.

Ms. Coleman complained to Kris Rosado on October 18, 2021 Mr. Sapp
continuing to sexually harass her, and also about Mr. Sapp sexually harassing Ms.
Francher. Ms. Coleman again complained to Ms. Rosado about Mr. Sapp's
continuing and relentless unwanted and unwelcome sexual harassment, and
unrelenting romantic and sexual pursuit of her. Arielle Griffin, another female
employee, accompanied Ms. Coleman when she spoke to Ms. Rosado on October 18,
2021, and heard Ms. Rosado say, in response to Ms. Coleman's complaints about Mr.

Sapp's unabating sexual harassment, that Ms. Coleman should give Mr. Sapp "what he wants", meaning to give in to his romantic and sexual demands.

40.

Arielle Griffin was an Assistant Food and Beverage Manager, the same title held by Ms. Coleman. She observed Mr. Sapp's sexual harassment of Ms. Coleman including his inappropriate and unwelcome touching of her, his statements that Ms. Coleman "was his", "was his girl", "that's [his] woman", "I have her". Ms. Griffin accompanied Ms. Coleman when she tried to complain, to no avail. Ms. Griffin as an Assistant Manager, also received complaints of sexual harassment from other female employees whom she supervised about sexual harassment of them by Mr. Sapp.

41.

Ms. Griffin provided a written statement to The Fox, corroborating Mr. Sapp's sexual harassment of Ms. Coleman and other women, and the fact that Ms. Coleman and other women had complained about it to no avail. Ms. Griffin wrote about accompanying Ms. Coleman on October 18, 2021 when Ms. Rosado told Ms. Coleman just to have sex with Mr. Sapp. Ms. Griffin wrote about this incident as follows:

- " I was in attendance and present with Kris, our manager at the time and Tierra Coleman, when Tierra went to Kris to discuss the rumors being spread of a relationship and Raleek's aggressive behavior. Kris,

manager at the time states as a reply, " maybe you should give him what he wants" ** hinting at sexual acts. Tierra declines disgusted and indeed walks away."

Ms. Griffin also wrote in her statement provided to The Fox:

- "There have been many accusations of sexual misconduct reported to the Fox Theater HR in the last 2 months in regards to [Mr. Sapp]."

42.

On December 9, 2021 Ms. Coleman again complained to Fox management about Mr. Sapp's sexual harassment. This was one of the many occasions when Mr. Sapp publicly verbally sexually harassed her, this time during daily line up, telling Ms. Coleman in front of coworkers "you lookin' too good today T, you gonna make me act up" , as he stared at her breasts. On this occasion, as she repeatedly did, Ms. Coleman asked him to stop but he just continued, and said,  "I'm just saying baby".

43.

On this occasion Ms. Coleman complained to Saxton Scott about Mr. Sapp's sexual harassment, who at that time was Assistant  Food and Beverage Director, before his promotion to Food and Beverage Director in April 2022.

44.

At the time she complained to Mr. Scott on December 9, 2021, Mr. Scott told Ms. Coleman that she could not talk to Mr. Phillips, who was the current Food and

Beverage Director, and Mr. Saxton's boss.  Further, in response to Ms. Coleman's complaints about Mr. Sapp's unrelenting sexual harassment, Mr. Scott stated to Ms. Coleman, "I can't do anything about that, because it's a matter of he said she said" and walked away.

45.

Miguel Corado worked as a bartender during the operative time frame.

46.

Mr. Corado wrote a sworn statement to The Fox corroborating Ms. Coleman's account about Mr. Sapp's sexual harassment of Ms. Coleman during line up, her complaint to Mr. Scott, and Mr. Scott's response that there was nothing he could do about it. In his written statement which Mr. Corado provided to The Fox, he wrote:

- "On Thursday, December 9th, 2021 Raleek Sapp, after our daily "line up" meeting given before the start of each event at the Fox, made a comment to Tierra stating "you lookin' too good today T, you gonna make me act up" as he was eyeing her body and her breasts. Tierra expressed her discomfort, stating "Raleek, please stop", but he continued "I'm just saying baby", looking at me as if to back him up on his words. Tierra continued to have a distinct discomfort in her attitude for the duration of the day."

- "Before the intermission for the show, I saw Tierra pull Saxton, the Food and Beverage manager, to the side and inform him of the issue. They were beside the bar that I was stationed at. I could hear her explain the situation that happened with Raleek, and Saxton proceeded to tell Tierra "I can't do anything about that, because it's a matter of he said she said", as he walked off."

47.

On or about January 13, 2022 Ms. Coleman continued to complain to Saxton Scott and showed him text messages from Ms. Coleman to Mr. Sapp telling him to stop spreading rumors that they were in a relationship.

48.

On January 30, 2022 Ms. Coleman cried to Mr. Sapp , asking him to stop his advances and rumors, because he was making work hard for her and bringing up past emotional trauma that she had endured. Mr. Sapp responded that he was sorry, but that he couldn't help how he feels.

49.

In February 2022, another employee, Kiearra Ware also complained to Saxton Scott about Raleek Sapp sexually harassing her. On or about February 10, 2022 Mr. Sapp kissed Ms. Ware, which was unwelcome, and Ms. Ware complained about this to Mr. Scott the following day. Other employees, including Keeara Ware went to Ms.

Coleman and to Arielle Griffin, who were both Assistant Food and Beverage

Managers, to complain about Raleek Sapp's sexual harassment. Ms. Coleman told

Ms. Ware to complain to Kris Rosado, and Ms. Ware told Ms. Coleman that she had

already complained to Saxton Scott. Kris Rosado and Saxton Scott later told Ms.

Coleman to write Ms. Ware up "to get her gone" and that she was a troublemaker.

50.

Kris Rosado, who on information and belief was near 40 years old, herself

repeatedly hit on and made inappropriate sexual remarks to male employees, even

those a decade or more younger than her. Other employees complained to Ms.

Coleman that they had witnessed Ms. Rosado in the closet having sex with an

employee. When Ms. Coleman confronted Ms. Rosado about the complaints she had

received regarding Ms. Rosado's inappropriate sexual acts, Ms. Rosado responded,

"yes, I let him blow my back out up in there all the time."

51.

Ms. Rosado openly encouraged Ms. Coleman to use men for sex to get what

she wants. Kris Rosado admitted to Ms. Coleman that she had sex with John Daniel,

who was a barback, in an effort to communicate to Ms. Coleman that it was OK to

have a personal/sexual relationship with coworkers. But Ms. Coleman did not want a

relationship with Raleek Sapp.

52.

Mr. Sapp's relentless pursuit of Ms. Coleman continued inside and outside the
workplace. In February 2022 bartenders repeatedly approached her about whether
Mr. Sapp was her boyfriend. Mr. Sapp stalked her, followed her home, showed up at
Ms. Coleman's own personal events uninvited, and even followed her to her other
place of employment causing her to leave in a panic, so Mr. Sapp would not know
exactly where she worked.

53.

Mr. Sapp clearly indicated that he did not intend to stop sexually and
romantically pursuing Ms. Coleman. In or about March 2022 Ms. Coleman
complained to other managers that Mr. Sapp told her that until she gave him a chance
there would be constant friction at work.

54.

Mr. Sapp told Ms. Coleman's mother, who on one occasion was at the Fox in
or about March 2022,  that he was going to be Ms. Coleman's husband, and "when
he sees something he likes he won't stop until he gets it." Ms. Coleman again
rebuffed Mr. Sapp, telling him that she does not date coworkers, to which he
responded that he didn't care.

55.

In March 2022,  Mr. Sapp showed up uninvited to a birthday luncheon that Ms. Coleman was having with a friend off work premises, and presented her with a pair of shoes that ostensibly he borrowed money to buy, that Ms. Coleman did not want or expect, and then proceeded to announce at work at the Fox that he was her boyfriend and had bought her shoes, to Ms. Coleman's embarrassment.

56.

Ms. Coleman continued to complain about Raleek Sapp's s sexual harassment to Saxton Scott throughout 2022.

57.

On or about March 27, 2022 Ms. Coleman was advised that she was being considered for Ms. Rosado's position as Food and Beverage Manager.

58.

When Ms. Coleman was supposed to start training for the Food and Beverage Manager position, which would have been a promotion, Mr. Scott told her that although he had been in the process of typing up a referral for Ms. Coleman to fill that position, he was going to decline because she was insubordinate in complaining, that she that she didn't follow the chain of command, and that she had a negative attitude and made negative comments. This was at the same time that Ms. Coleman was continuing to complain about Mr. Sapp's unwelcome sexual harassment of her,

and Mr. Scott's responses to her that she has "to get over it" and "learn to work with" Mr. Sapp.

59.

The Fox told the EEOC that Mr. Scott considered promoting Ms. Coleman but did not so because "she needed to focus on . . . having a positive attitude about The Fox rather than making negative and disparaging comments about it." These alleged "negative" comments were Ms. Coleman's repeated complaints about being subjected to unrelenting sexual harassment.

60.

Throughout April 2022 Kris Rosado and Saxton Scott told Ms. Coleman and other employees who were sexually harassed by Mr. Sapp to "get over it" and "learn to work with him", and in Ms. Rosado's words, that all the managers needed to learn to work with Mr. Sapp, that he was "here to stay", and that if they didn't like it, they "could hit the door."

61.

In or about mid-April 2022 there were several promotions. Saxton Scott was promoted to Director of Food and Beverage , Kris Rosado was promoted to Assistant Director of Food and Beverage, and Rolek Sapp was promoted over Ms. Coleman, to the position of Food and Beverage Manager so that Ms. Coleman now reported to Mr. Sapp.

62.

After these promotions, Mr. Sapp's sexual pursuit of Ms. Coleman continued and Ms. Coleman continued to complain to Saxton Scott. Ms. Coleman told Mr. Scott that she could not work with Raleek Sapp to which Mr. Scott responded that Ms. Coleman needed to stop being childish, and that she'd have to "get over it" and learn to work with Mr. Sapp. Mr. Scott rejected Ms. Coleman's requests not to have to "close" alone with Mr. Sapp, and rejected her plea to be moved to a different department so that she did not have to work with Mr. Sapp.

63.

In or about April 2022 Mr. Scott also rejected Ms. Coleman for another promotion.

64.

On April 29, 2022 Ms. Coleman was assaulted by a guest who grabbed her breasts and backed her into a corner. Ms. Coleman yelled for either Mr. Scott or Mr. Sapp to come help her, but neither did. Two security guards who heard her on the walkie talkie came, and only then did Mr. Scott come. However, nothing was done, and there was no report or documentation of this incident.

65.

As 2022 continued, Ms. Coleman continued to complain about Mr. Sapp's sexual harassment which had escalated to his trying to kiss her, his relentlessly

telling her about having sex with him and being his girlfriend, what he looked like "down there", and spreading rumors at The Fox that they were together and a couple. Ms. Coleman repeatedly rebuffed his advances, which were entirely unwelcome. Mr. Sapps' sexual advances continued until Ms. Coleman was terminated by The Fox.

66.

During 2022, Ms. Coleman also complained that Ms. Sapp's sexual advances were made also towards bartenders and other managers, who also complained to her as Assistant Food and Beverage manager, as well as to other managers. When Ms. Coleman, on behalf of other female employees, complained about Mr. Sapp's sexual harassment of them, these complaints also were ignored. For example, in or about May 2022, Ms. Coleman complained about Mr. Sapp's sexual slurs to bartenders and nothing was done.

67.

After Mr. Sapp became Ms. Coleman's supervisor in mid- April 2022, he not only continued to sexually harass Ms. Coleman, but additionally embarked on a retaliatory campaign to impede her from doing her job, and to marginalize, exclude and embarrass her in managers meetings, during "line up", and in front of other coworkers.

68.

James Wallace, a manager, wrote a statement provided to The Fox which corroborated Mr. Sapp's unrelenting sexual harassment of Ms. Coleman along with Mr. Sapp's retaliatory conduct towards her after he was promoted to Food and Beverage Manager. Mr. Wallace, *inter alia*, wrote in his statement the following:

- "it was the constant and egregious treatment of Tierra Coleman from Raleek that stands apart";

- "Raleek from the beginning was very vocal about his various interests with many of the female staff at that time in speaking with me casually in conversation. In short, Raleek had a serious thing for Tierra";

- "She was always pretty vocal about where he stood with her and how she doesn't date coworkers. It was very obvious by Raleek's behavior that he was not happy";

- "Petty outbursts to Tierra started occurring, improper outbursts about her dress around other employees started to happen, unmerited criticism about her job performance were mentioned to other managers";

- "It was quite toxic on Tierra's and everyone's behalf and it was very noticeable by any employee around";

- "Now... the promotion of Raleek was another level. He was now our supervisor. This is where the powers that be of his promotion should

have intervened but they did not. The whole dynamic changed for everyone again and the hostile environment became more intense. We all felt it in just basic interactions, (i.e. line up of staff, Tierra trying to get product for the stand that she's in charge of that he questioned and refused to provide, etc…which leads to sabotage in the workplace). It all reeked of retaliation/retribution because she would not see him romantically";

- "She told the new management team (Kris and Saxton) of his mistreatment of herself and other employees. It was really tough for Tierra to function in due course of business. In short, after the promotion of Raleek to a salaried AGM he was sure to make Tierra as uncomfortable as possible";

- "he didn't stop at Tierra. Numerous complaints by other females on staff were coming to light (all staff actually). They were either ignored…OR! [sic] heard and fell on deaf ears about his other advances, misappropriate [sic] behavior, and/or verbal inappropriateness. All or most information came into my ears directly from stressed out subordinate co-workers, saying they reported it to either Kris Rosado and Saxton Scott with no apparent actions taken"

69.

During the course of her employment Ms. Coleman was passed over for several promotions as a result of her continuing complaints about Mr. Sapp's sexual harassment, which was discriminatory and further contributed to a retaliatory hostile environment.

70.

During the course of her many complaints to Mr. Scott about Mr. Sapp's unabating unwelcome romantic pursuit of her and sexual harassment of her, Ms. Coleman asked Mr. Scott if she could be moved to a different department so that she did not have to work with Mr. Sapp. Ms. Coleman suggested the marketing department. At one point Mr. Scott told her that she could have a job in payroll, but then reneged on that because he told Ms. Coleman that she was a cloud on the Fox.

71.

On July 27, 2022 Ms. Coleman had yet another conversation with Saxton Scott reiterating her sexual harassment complaints and that the Fox has also been made aware of Raleek Sapp sexually harassing other female employees but has done nothing about it. Ms. Coleman also complained about Mr. Sapp's retaliating against her.

72.

Ms. Coleman had similarly complained about retaliation to Kris Rosado on numerous occasions.  Ms. Rosado's response was to have a manager's meeting during which she stated that if anyone did not like Mr. Sapp, they could leave.

73.

On July 27, 2022, Mr. Scott told Ms. Coleman that she was "negative" and a "black cloud", that she had to learn to get along with Mr. Sapp, and that he [Mr. Scott] didn't have the time to continue the conversation.

74.

On July 29, 2022 Kris Rosado and Saxton Scott fired Ms. Coleman.   On July 29, 2022 for the first time Ms. Rosado and Mr. Scott gave Ms. Coleman alleged write-ups, all for the same day, including that she had a negative attitude and spoke down on the Fox. This was the first time Ms. Coleman had ever been given any write-up.

75.

Ms. Coleman was terminated two days after her continuing complaint to Mr. Scott on July 27, 2022 about Mr. Sapp's unabating sexual harassment of her, when Mr. Scott told Ms. Coleman that he "didn't have time to continue the conversations",

76.

The ostensible reasons for Ms. Coleman's termination were fabricated and untrue.

77.

Immediately after Ms. Coleman was fired, Kris Rosado followed her, which scared Ms. Coleman. As Ms. Coleman was walking out, she saw that the office door of Alan Vella, President of The Fox was open. Ms. Coleman went into his office, let him know who she was, her  position, and that she had just gotten fired, in retaliation for continuing to complain about sexual harassment by Raleek Sapp. Mr. Vella told Ms. Coleman to get in contact with HR, to which Ms. Coleman responded that she wasn't aware that The Fox had an HR person.  This conversation was the first time that Ms. Coleman was made aware of April Sutton as the new HR person for The Fox.

78.

Ms. Coleman thereafter contacted April Sutton, who confirmed that other women also came forward and complained about Raleek Sapp's sexual harassment.

79.

Ms. Sutton asked Ms. Coleman if she would be interested in having her job back, but Ms. Sutton specified that Ms. Coleman could only do so if she continued to

work under Saxton Scott who repeatedly ignored her sexual harassment complaints and retaliated against her.

80.

Ms. Sutton told Ms. Coleman there would be an ongoing investigation. Several managers and employees, including Mr. Wallace, Ms. Griffin, Mr. Corado, and Mr. Lawrence Hill provided written statements to The Fox. In addition to the quoted statements referred to above in this Complaint, Mr. Hill wrote to The Fox:

- "I have been a witness to Raleek stating he and Tierra were dating and saying this throughout the Fox Theater."

- "Our manager Kris, was told by Tierra her frustrations, she stated to use him for his money as a solution."

- "Please feel free to contact HR at the Fixx [sic] theater about multiple cases of sexual misconduct reported on the defendant" [referring to Mr. Sapp].

81.

Ms. Sutton never contacted Ms. Coleman again even though Ms. Coleman reached out to her.

82.

The Fox's current website as of the date of this Complaint lists Mr. Scott as the Food and Beverage Director.

No Effective Sexual Harassment Policy or Procedure

83.

On information and belief, to the extent that The Fox had a sexual harassment policy, it was buried in onboarding documents, not distributed in any paper form, and employees, including Ms. Coleman, were not even aware of its existence.

84.

Ms. Coleman received no sexual harassment training, and there was no discussion about how or to whom to direct sexual harassment complaints.

85.

Ms. Coleman was unaware of who the HR person was because he died, and it was not until after she was fired that she learned the identity of a new HR person, who was April Sutton.

86.

On information and belief, to the extent that The Fox had a sexual harassment policy, it did not effectively distribute it, nor did that policy specify to whom to direct sexual harassment complaints other than to "senior management".

87.

In light of Mr. Sapp's open and notorious sexual harassment of Ms. Coleman and other female employees, some employees advocated for work sensitivity training, but this was rejected by Ms. Rosado and Mr. Scott.

88.

Ms. Coleman's job was repeatedly threatened by Mr. Sapp.

89.

Ms. Rosado and Mr. Scott, who ran the Food and Beverage Department, repeatedly told Ms. Coleman that she could not go above them in the chain of command. Mr. Scott specifically told her on more than one occasion that he was raised military, that he runs his management team based on military procedures, and that Food and Beverage employees were prohibited from violating the chain of command. Ms. Coleman told Mr. Vella on the day that she was fired, during her discussion with him, that her job was repeatedly threatened if she ever went "above the chain of command". Mr. Vella admitted that many people related the same thing to him, that the Food and Beverage supervisors (Ms. Rosado and Mr. Scott) told their subordinates that they could not complain about anything outside the Food and Beverage Department on pain of losing their jobs.

90.

The Fox admitted Ms. Coleman's complaints about Mr. Sapp to the EEOC and stated that , "Ms. Coleman's supervisors interpreted her complaints as a personality conflict with Mr. Sapp rather than actionable harassment" , even though The Fox maintained that it had a sexual harassment policy and turned over its ostensible policy to the EEOC.

91.

The Fox turned over to the EEOC its purported handbook ostensibly
containing its policies including "policy against sexual harassment".  The Fox's
policy against sexual harassment purports to prohibit: "unwelcome sexual advances,
requests for sexual favors, and other verbal or physical conduct of a sexual nature".

92.

The Fox's purported sexual harassment policy which The Fox provided to the
EEOC gives as examples of conduct that might constitute sexual harassment:

- "Unwelcome requests for sexual favors

- Lewd or derogatory comments or jokes

- Comments regarding sexual behavior or the body of another
  employee

- Sexual innuendo and other vocal activity such as catcalls or
  whistles

- Obscene letters, notes, emails, invitations, photographs,
  cartoons, articles, or other written or pictorial materials of a
  sexual nature

- Requests for dates after being informed that interest is unwelcome

- Retaliating against an employee for refusing a sexual advance or retaliating against an employee for reporting an incident of possible sexual harassment to the Fox or any government agency

- Offering or providing favors or employment benefits such as promotions, favorable evaluations, favorable assigned duties or shifts, etc., in exchange for sexual favors

- Any unwanted physical touching or assaults, or blocking or impeding movements"

93.

Ms. Coleman's "supervisors" "interpretation" of her complaints about Ms. Sapp's unabating sexual harassment as a "personality conflict" instead of "actionable harassment" as The Fox told the EEOC, and their refusal to remedy the situation, violated The Fox's own purported sexual harassment policy.

94.

The Fox's purported sexual harassment policy was ineffective and lip service at best and inadequate to prevent sexual harassment , because its own supervisors, including Kris Rosado and Saxton Scott, who was the Director of the Food and Beverage Department, continually dismissed Ms. Coleman's repeated complaints about Mr. Sapp's sexually harassing conduct, which was clearly outlined in its

purported policy as sexually harassing conduct, and because Ms. Rosado told Ms. Coleman to just go have sex with Mr. Sapp.

95.

The Fox's purported sexual harassment policy was ineffective and lip service at best, and inadequate to prevent sexual harassment, because Ms. Rosado and Mr. Scott explicitly told Ms. Coleman to write up and get rid of Ms. Ware who had complained about sexual harassment, stating that Ms. Ware was a troublemaker. Ms. Rosado and Mr. Scott similarly retaliated against Ms. Coleman in clear violation of The Fox's purported policy which explicitly ostensibly prohibits retaliation.

96.

Pursuant to the policy which The Fox provided to the EEOC, an employee who has witnessed or feels that he or she has been subjected to discrimination is "required to immediately notify your supervisor, Human Resources, or other manager at Fox."  As described above, Ms. Coleman was not aware of who was HR until Mr. Vella told her about April Sutton, after her termination. Further, Ms. Coleman's repeated complaints to her supervisors (including to Mr. Sapp), but also to Kris Rosado and Saxton Scott were totally disregarded, and resulted in Ms. Coleman being viewed as the problem, and terminated.

97.

The Fox told the EEOC that Mr. Scott's consideration of Ms. Coleman for

34

promotion was impacted by her "negative and disparaging" comments and that she was "written up" for "making degrading comments and disparaging remarks."  These alleged negative and disparaging remarks were her repeated complaints about being sexually harassed and not wanting to work with a man who relentlessly made unwelcome romantic and sexual advances towards her, and subjected her to unwanted sexual touching.

98.

Ms. Coleman was never offered any position other than to continue to work under Saxton Scott who ignored her  sexual harassment complaints, considered Ms. Coleman the problem and the cloud at the Fox, and then retaliated against her by fabricating derelictions and firing her for fabricated reasons.

99.

As of the date of this Complaint, the EEOC portal regarding Ms. Coleman's EEOC Charge, reflects the status of Ms. Coleman's  Charge at the EEOC is "Compliance Monitoring".

100.

Ms. Coleman has suffered and continues to suffer *inter alia* economic damages, mental anguish damages, damages to her career and reputation.

35

101.

The Fox's actions were wanton and willful, done with malice, or at the least done with reckless or callous disregard of its own policies and Ms. Coleman's legal right to work in an environment free of unrelenting sexual harassment and retaliation, subjecting it to punitive damages.

FIRST CAUSE OF ACTION
SEXUAL HARASSMENT
(TITLE VII OF THE 1964 CIVIL RIGHTS ACT,
42 U.S.C.§2000e *et seq)*

102.

Ms. Coleman realleges ¶¶1-101 with the same force and effect as if set forth fully herein.

103.

In particular, Ms. Coleman realleges the allegations contained in regarding the (¶¶2-6) regarding the parties,  (¶7-8) regarding jurisdiction and venue  (¶¶1,9) regarding nature of the action, and  (¶10-16) regarding satisfaction of conditions precedent.

103.

In particular, Ms. Coleman realleges (¶2) which sets forth that she is female and therefore in a protected class.

36

104.

Ms. Coleman realleges the allegations contained in ¶¶1, 27-99 establishing that she was subjected to ongoing sexual harassment by Raleek Sapp, was sexually assaulted by a guest, all of which was unwelcome, and otherwise subjected to a sexually hostile work environment in which she as a manager, received sexual harassment complaints by other female employees against the same Mr. Sapp who was sexually harassing her, as well as was told by her supervisor, Kris Rosado to just "give him what he wants" referring to giving Mr. Sapp sex. The sexualized environment at The Fox was further demonstrated by Ms. Rosado's own sexual conduct with coworkers and subordinates, which employees complained about to Ms. Coleman.

105.

Ms. Coleman realleges the allegations contained in ¶¶1, 27-99 demonstrating that Mr. Sapp's harassment of her was based on sex, as was the sexual assault and battery of her by a guest. These allegations also demonstrate that the sexualized environment at the Fox was based on sex, as Mr. Sapp also sexually harassed other women, which was corroborated by employees and managers who provided statements to The Fox as well as by April Sutton, the HR person, whom Ms. Coleman first learned about after she was terminated.

106.

Ms. Coleman realleges the allegations contained in ¶¶1, 27-99 demonstrating

that the work environment at The Fox was sexually hostile and permeated with

sexual harassment which was directed at her, and at other females about which she

knew at the time of her employment, and on whose behalf she also complained. ¶99

of the Complaint alleges that the EEOC is presently engaged in "Compliance

Monitoring" with respect to Ms. Coleman's EEOC Charge against The Fox.

107.

Ms. Coleman realleges the allegations contained in ¶¶1, 27-99 demonstrating

that the harassment was sufficiently severe or pervasive to alter the terms and

conditions of employment and create a discriminatorily abusive working

environment. ¶¶1, 27 -99 set forth allegations that Mr. Sapp romantically and

sexually pursued Ms. Coleman day in and day out during the entirety of her

employment, by making explicit sexual demands, explicitly referring to his long

"dick", and "going down" on her, spreading false rumors at The Fox that they were

dating, making inappropriate sexualized remarks intending to embarrass her, stalking

her, following her home as well as to her other job, and refusing to stop even though

Ms. Coleman specifically told him that his advances were unwelcome and causing

her to relive past trauma. Mr. Sapp also touched her by rubbing up against her, side

hugging her and grabbing her breasts. On the one occasion that Ms. Coleman was

sexually assaulted by a guest The Fox did nothing about that incident and did not even document it. ¶62 details Ms. Coleman's continued complaints to Director of Food and Beverage Saxton Scott, who told her that she'd have to stop being childish, get over it and learn to work with Mr. Sapp. ¶62 also details that Mr. Scott refused Ms. Coleman's plea to be moved to a different department so that she did not have to work with Mr. Sapp, and her request not to be put in the position of having to "close" alone with Mr. Sapp. The complaints to Mr. Scott along with Ms. Coleman's plea to be moved to a department where she did not have to work with Mr. Sapp (which Mr. Scott refused) supports that the harassment was sufficiently severe or pervasive to alter the terms of Ms. Coleman's working environment.

108.

The statements provided by coworkers and managers at The Fox to The Fox, in particular the statements provided by James Wallace, Arielle Griffin, Lawrence Hill and Miguel Corado also demonstrate that the sexual harassment was severe or pervasive. These individuals specifically described "the constant and egregious treatment of Tierra Coleman from Raleek", about her repeated complaints to management which went unheeded, that Raleek Sapp interfered with Ms. Coleman's ability to perform her job functions, and that "it was really tough for Tierra to function in due course of business" (¶¶ 41, 46, 68, 80)

109.

Ms. Coleman realleges the allegations contained in ¶¶1, ¶¶1, 27 -99

establishing that she held a subjective belief that she was being sexually harassed, as

evidenced by the fact that she directly continually rebuffed Mr. Sapp's advances, and

complained about his unwanted romantic and sexual advances repeatedly, to no

avail. ¶ 37 described Ms. Coleman's complaint to Kris Rosado on September 30,

2021 after the first incident with Mr. Sapp, which she described as unwelcome,

aggressive and said caused her to be upset and uncomfortable. ¶46 sets forth Mr.

Corado's statement to The Fox in which he described sexual harassment of Ms.

Coleman during morning line-up which caused her discomfort which he perceived

lasted all day. ¶48 sets forth allegations that Ms. Coleman cried to Mr. Sapp to stop

his unwelcome advances and rumors because it was making work hard for her and

bringing up past emotional trauma. ¶¶68 sets forth allegations concerning manager

James Wallace's statement to The Fox including his statement that Mr. Sapp's sexual

harassment and treatment of Ms. Coleman made it "really tough for Tierra to

function in due course of business."

110.

Ms. Coleman alleges that a reasonable woman in her position would

objectively construe the work environment at The Fox to be permeated with sexual

hostility and that she was objectively subjected to unwelcome sexual harassment.

40

111.

Ms. Coleman realleges ¶¶1, 27 -99 to demonstrate that she repeatedly
complained to her superiors who were "senior management" about Mr. Sapp's
unrelenting romantic and sexual pursuit of her to no avail. *Inter alia,* ¶¶1, 27, 35, 37-
47, 49 – 51, 56-63, 65-66, 68, 70, 71, 72,  73, 75, 77, 78, and 80 set forth allegations
demonstrating Ms. Coleman's repeated complaints about sexual harassment right up
until she was terminated by Kris Rosado and Saxton Scott two days after her last
sexual harassment complaint to Mr. Scott.

112.

Ms. Coleman realleges ¶¶1, 27 -99, to demonstrate that The Fox took
absolutely no remedial action to stop the sexual harassment to which Ms. Coleman
was subjected at The Fox. ¶¶83-97 demonstrate that any purported preventive action
by The Fox was ineffective to prevent the sexual harassment to which Ms. Coleman
was subjected during the entirety of her employment, or to prevent the retaliatory
hostile environment or retaliatory failures to promote her or the retaliatory
termination of her employment. The alleged policy was buried in onboarding
documents, specified senior management as the proper individuals to receive sexual
harassment complaints, but the Fox admitted to the EEOC that Ms. Rosado and Mr.
Scott did not "interpret" the conduct about which Ms. Coleman was repeatedly
complaining to be sexual harassment, even though The Fox's purported sexual

harassment policy proscribed the exact conduct Ms. Coleman continually complained about. ¶99 alleges that presently the EEOC is engaging in "Compliance Monitoring" of The Fox.

### 113.

Ms. Coleman realleges ¶¶ 36, 46, 48, 68, and 100 demonstrating that she has suffered economic and non-economic damages arising out of the sexual harassment to which she was subjected.

### 114.

The Fox's actions were wanton and willful, done with malice, or at the least done with reckless or callous disregard of its own policies and Ms. Coleman's legal right to work in an environment free of unrelenting sexual harassment and retaliation, subjecting it to punitive damages.

<u>SECOND CAUSE OF ACTION</u>
<u>SEX DISCRIMINATION</u>
<u>(TITLE VII OF THE 1964 CIVIL RIGHTS ACT,</u>
<u>42 U.S.C.§2000e *et seq)*</u>

### 115.

Ms. Coleman realleges ¶¶1-101 with the same force and effect as if set forth fully herein.

### 116.

In particular, Ms. Coleman realleges the allegations contained in regarding the

(¶¶2-6) regarding the parties,  (¶7-8) regarding jurisdiction and venue  (¶¶1,9) regarding nature of the action, and  (¶10-16) regarding satisfaction of conditions precedent.

117.

In particular, Ms. Coleman realleges (¶2) which sets forth that she is female and therefore in a protected class.

118.

Ms. Coleman was qualified for her job as an Assistant Food and Beverage Manager as well as for the Food and Beverage Manager position.

119.

Ms. Coleman was subjected to various adverse employment actions because of her sex which was at least a motivating factor, including *inter alia*:

1) being subjected to sexually hostile work environment which itself affected the terms and conditions of her employment;

2) being passed over for promotions; and

3) being terminated for fabricated reasons.

120.

The Fox purportedly had a policy against sexual harassment and discrimination. Nevertheless, despite its awareness of illegal gender discrimination and sexual harassment, and of illegal retaliation for complaining

about gender discrimination and sexual harassment, The Fox ignored Ms. Coleman's repeated complaints about unwelcome sexual harassment and retaliation, took no steps to effectively eradicate the sexual harassment and gender discrimination and retaliation, and instead cast Ms. Coleman as the troublemaker, denied her promotions and ultimately fired her two days after her last sexual harassment complaint.

121.

The Fox's reasons for terminating Ms. Coleman were fabricated and pretextual. Indeed Ms. Sutton offered Ms. Coleman her job back, but only on the condition that she continue to work for Mr. Saxton Scott who dismissed her sexual harassment complaints and retaliated against her. Ms. Sutton's offering Ms. Coleman her job back demonstrates that the reasons for Ms. Coleman's termination were fabricated and pretextual.

122.

Ms. Coleman was terminated because of her sex, which was at least a motivating factor in her termination.

123.

Ms. Coleman has suffered mental, emotional and economic damages as a result of The Fox's aforesaid unlawful actions, as well as injury to reputation and future pecuniary loss.

124.

The Fox's aforesaid unlawful actions were done with intent to unlawfully discriminate against/ and/or deprive Ms. Coleman of her rights or with reckless disregard of her rights and were wanton and willful so as to make appropriate an award for punitive damages.

### THIRD CAUSE OF ACTION
### RETALIATION
### (TITLE VII OF THE 1964 CIVIL RIGHTS ACT,
### 42 U.S.C.§2000e *et seq)*

125.

Ms. Coleman realleges ¶¶1-101 with the same force and effect as if set forth fully herein.

126.

In particular, Ms. Coleman realleges the allegations contained in regarding the (¶¶2-6) regarding the parties,  (¶7-8) regarding jurisdiction and venue  (¶¶1,9) regarding nature of the action, and  (¶10-16) regarding satisfaction of conditions precedent.

127.

Ms. Coleman realleges (¶2) which sets forth that she is female and therefore in a protected class.

128.

Ms. Coleman engaged in protected activity. Ms. Coleman realleges ¶¶1, 27 -99

to demonstrate that she repeatedly complained to her superiors who were "senior management" about sexual harassment and in particular Mr. Sapp's unrelenting romantic and sexual pursuit of her to no avail. *Inter alia,* ¶¶1, 27, 35, 37- 47, 49 – 51, 56-63, 65-66, 68, 70, 71, 72,  73, 75, 77, 78, and 80 set forth allegations demonstrating Ms. Coleman's repeated complaints about sexual harassment right up until she was terminated by Kris Rosado and Saxton Scott two days after her last sexual harassment complaint to Mr. Scott.

129.

Ms. Coleman realleges the allegations in ¶¶1, 27-99 9-67 demonstrating that Ms. Coleman's protected activity was based on her subjectively honest as well as an objectively reasonable belief that she was being sexually harassed and retaliated against.

130.

Ms. Coleman realleges ¶¶1, 34, 37, 39, 41, 49, 51, 56-63, 67- 79, all of which establish unlawful retaliation. In particular these paragraphs describe that after Ms. Coleman complained about unrelenting sexual harassment, Ms. Rosado and Mr. Scott threatened her not to go outside the department with her complaints, that Ms. Rosado told her to give Mr. Sapp "what he wants" sexually, that Ms. Coleman was considered for and passed over for promotions because she "needed to focus on having a positive attitude about The Fox" and because of negative remarks, all of

46

which had to do with The Fox's refusal to remedy the sexually hostile work environment. These paragraphs describe that Mr. Sapp himself, as Ms. Coleman's new supervisor as of in or about mid-April 2022, retaliated against Ms. Coleman, which Mr. Wallace described in his statement to The Fox, set forth in ¶68. ¶49 sets forth allegations that Ms. Coleman herself was told by Kris Rosado and Saxton Scott to write up and get rid of Kierra Ware after she complained of Mr. Sapp's sexual harassment. The paragraphs set forth above in this paragraph describe Mr. Scott's repeated admonishment that Ms. Coleman would have to learn to get along with Mr. Sapp, and ¶¶71-76 set forth Ms. Coleman's continuing complaints about sexual harassment and retaliation to Mr. Scott and Ms. Rosado, including her specific conversation with Mr. Scott on July 27, 2022 at which time Mr. Scott reiterated to Ms. Coleman that she was a "black cloud", and "negative", that she had to learn to get along with Mr. Sapp and that Mr. Scott did not have time to continue the conversation. ¶ 74 sets forth that two days later, on July 29, 2022 Kris Rosado and Saxton Scott fired Ms. Coleman for fabricated reasons.

131.

The allegations referred to in ¶129 would tend to dissuade a reasonable person from complaining about unlawful sexual harassment and unlawful retaliation.

132.

The allegations referred to in ¶129 establishing unlawful retaliation were

because Ms. Coleman complained about unlawful sexual harassment and unlawful

retaliation, and

133.

Ms. Coleman has suffered mental, emotional and economic damages as a

result of The Fox's aforesaid unlawful actions, as well as injury to reputation and

future pecuniary loss.

134.

The Fox's aforesaid unlawful actions were done with intent to unlawfully

retaliate against/ and/or deprive Ms. Coleman of her rights or with reckless disregard

of her rights and were wanton and willful so as to make appropriate an award for

punitive damages.

<u>FOURTH CAUSE OF ACTION</u>
<u>RETALIATORY HARASSMENT</u>
<u>(TITLE VII OF THE 1964 CIVIL RIGHTS ACT,</u>
<u>42 U.S.C.§2000e *et seq)*</u>

135.

Ms. Coleman realleges ¶¶1-101 with the same force and effect as if set forth

fully herein.

136.

In particular, Ms. Coleman realleges the allegations contained in regarding the (¶¶2-6) regarding the parties,  (¶7-8) regarding jurisdiction and venue  (¶¶1,9) regarding nature of the action, and  (¶10-16) regarding satisfaction of conditions precedent.

137.

Ms. Coleman realleges (¶2) which sets forth that she is female and therefore in a protected class.

138.

Ms. Coleman engaged in protected activity. Ms. Coleman realleges ¶¶1, 27 -99 to demonstrate that she repeatedly complained to her superiors who were "senior management" about sexual harassment and in particular Mr. Sapp's unrelenting romantic and sexual pursuit of her to no avail. *Inter alia,* ¶¶1, 27, 35, 37- 47, 49 – 51, 56-63, 65-66, 68, 70, 71, 72,  73, 75, 77, 78, and 80 set forth allegations demonstrating Ms. Coleman's repeated complaints about sexual harassment right up until she was terminated by Kris Rosado and Saxton Scott two days after her last sexual harassment complaint to Mr. Scott.

138.

Ms. Coleman realleges the allegations in ¶¶1, 27-99 9-67 demonstrating that Ms. Coleman's protected activity was based on her subjectively honest as well as an

objectively reasonable belief that she was being sexually harassed and retaliated against.

140.

Ms. Coleman realleges ¶¶1, 34, 37, 39, 41, 49, 51, 56-63, 67- 79, all of which establish unlawful retaliation. In particular these paragraphs describe that after Ms. Coleman complained about unrelenting sexual harassment, Ms. Rosado and Mr. Scott threatened her not to go outside the department with her complaints, that Ms. Rosado told her to give Mr. Sapp "what he wants" sexually, that Ms. Coleman was considered for and passed over for promotions because she "needed to focus on having a positive attitude about The Fox" and because of negative remarks, all of which had to do with The Fox's refusal to remedy the sexually hostile work environment about which she was complaining. These paragraphs describe that Mr. Sapp himself, as Ms. Coleman's new supervisor as of in or about mid-April 2022, retaliated against Ms. Coleman, which Mr. Wallace described in his statement to The Fox, set forth in ¶68. ¶49 sets forth allegations that Ms. Coleman herself was told by Kris Rosado and Saxton Scott to write up and get rid of Kierra Ware after she complained of Mr. Sapp's sexual harassment. The paragraphs set forth above in this paragraph describe Mr. Scott's repeated admonishment that Ms. Coleman would have to learn to get along with Mr. Sapp, and ¶¶71-76 set forth Ms. Coleman's continuing complaints about sexual harassment and retaliation to Mr. Scott and Ms.

50

Rosado, including her specific conversation with Mr. Scott on July 27, 2022 at which time Mr. Scott reiterated to Ms. Coleman that she was a "black cloud", and "negative", that she had to learn to get along with Mr. Sapp and that Mr. Scott did not have time to continue the conversation. ¶ 74 sets forth that two days later, on July 29, 2022 Kris Rosado and Saxton Scott fired Ms. Coleman for fabricated reasons. Ms. Coleman alleges that cumulatively these aforesaid adverse employment actions might well dissuade a reasonable employee from making a similar charge of sexual harassment creating a retaliatory hostile environment.

### 141.

The allegations referred to in ¶129 would tend to dissuade a reasonable person from complaining about unlawful sexual harassment and unlawful retaliation.

### 142.

The allegations referred to in ¶129 establishing unlawful retaliation were because Ms. Coleman complained about unlawful sexual harassment and unlawful retaliation, and

### 143.

Ms. Coleman has suffered mental, emotional and economic damages as a result of The Fox's aforesaid unlawful actions, as well as injury to reputation and future pecuniary loss.

144.

The Fox's aforesaid unlawful actions were done with intent to unlawfully subject Ms. Coleman to a retaliatory hostile environment and to retaliate against/ and/or deprive Ms. Coleman of her rights or with reckless disregard of her rights and were wanton and willful so as to make appropriate an award for punitive damages.

WHEREFORE, Plaintiff seeks the following relief:

1.  That process issue and this Court take jurisdiction over this case;

2.  Judgment against Defendant and for the Plaintiff;

3.  Compensatory damages for the Defendant's violations of law enumerated herein embodying make-whole relief for Plaintiff's economic damages, including but not limited to full back-pay and benefits of employment,

4.  Damages for mental anguish;

5.  Damages for injury to Plaintiff's professional reputation and damage to her career;

6.  Judgment against Defendant and for Plaintiff, affording declaratory relief, and permanently enjoining Defendant from future violations of law enumerated herein;

7.  Appropriate injunctive relief;

8.  Reinstatement;

9.  Front pay in the event that reinstatement is not possible;

52

10.  Damages for future pecuniary loss;

11. Punitive Damages against Defendant;

12. Prejudgment interest and post-judgment interest;

13. Attorneys' fees, expert witness fees, costs and disbursements of this

    action;

14. All equitable relief that is allowed by law; and

15. Such other and further relief as this Court deems appropriate.

JURY DEMAND

Plaintiff demands trial by jury on all issues so triable.

This 8th day of May 2024.

> Respectfully submitted,
> /s/Jean Simonoff Marx
> Jean Simonoff Marx
> Georgia Bar No. 465276
> E-mail: jeannie.marx@marxlawgroup.com
> Robert N. Marx
> Georgia Bar Number 475280
> E-mail:  lawyers@marxlawgroup.com
> Marx & Marx, L.L.C.
> Attorneys for Plaintiff
> 1050 Crown Pointe Parkway
> Suite 500
> Atlanta, Georgia 30338
> Robert N. Marx, Esq.
> Georgia Bar Number 475280
> Marx & Marx, L.L.C.
> 1050 Crown Pointe Parkway Suite 500
> Atlanta, Georgia 30338
> Telephone:  (404) 261-9559

jeannie.marx@marxlawgroup.com
Attorneys for Plaintiff Tierra Coleman